and on oil cloth of all descriptions." The collector insisted upon his construction of the statutes, and the higher duty was paid under protest, and this action is brought to recover the excess.

I understand it to be agreed that this article is described in both the sections referred to; that is to say, it is a manufacture of silk, india rubber, and other articles; and it is webbing; and further, that, on the one hand, there is webbing composed wholly or in part of india rubber which has no silk in its composition; and on the other, that there are manufactures of india rubber, silk, and other articles, which are not webbing. It would seem that there is no necessary repugnance between the two sections; because when it is admitted that section 8 describes this article, it is excepted out of section 13, as being otherwise provided for. But the plaintiffs contend that when an article is specially designated in the revenue laws, it is taken permanently out of any general description which might otherwise include it. Thus where almonds had been mentioned in several statutes and classed differently from fruits, an amendment which reduced the duty on all fruits, did not apply to almonds. Homer v. The Collector, 1 Wall. [68 U. S.] 490; and so where birds had been for a long time placed in a separate list from other animals, a duty imposed on horses, mules, cattle, sheep, hogs, and other live animals, was held not to include canary birds. Reiche v. Smythe, 13 Wall. [80 U. S.] 162. So, where sheep-skins with the wool on them, had been specially mentioned in several acts, and there separated from hides and skins, they were held not to be included in the general description of hides or skins in a new statute. De Forest v. Lawrence, 13 How. [54 U. S.] 274.

The doctrine of these cases is, that when articles have been specially dealt with and classified, apart from a larger class which might have included them, and a new statute changes the duty on the larger class and is silent as to the smaller, it is not to be considered as intending to change the duty on the latter. But here the very question is whether webbing is intended to be dealt with separately from manufactures of india rubber and silk; these two descriptions being found together for the first time in the act of 1862, and the 13th section having annexed to it the qualification, "not otherwise provided for." It is said that this phrase means not provided for among the enumerated articles. It is impossible to admit any such rule of interpretation. It is argued that the specific always overrides the general description. This is a sound rule. But the specification in this instance has annexed to it the qualification "not otherwise provided for," and this webbing, being a manufacture of india rubber, silk, and other materials, is otherwise provided for. To meet this last objection a quotation is given from the opinion of Nelson, J., in Morlot v. Lawrence [Case No. 9,815]: "The words 'not otherwise provided for,' mean not otherwise provided for among the enumerated articles." The plaintiffs make use of this sentence as if it expressed the opinion that an article, to be considered as provided for, must be named; whereas all the learned judge intends to say is that an article could not be called provided for merely because there was a residuary clause imposing a uniform duty on everything not before either taxed or exempted; or in other words, that an article was not provided for by being left unprovided for; a sound ruling, but not important in this case. It has never been held that an article may not be designated by an apt description as well as by name. The plaintiffs furnished me with a copy of the charge of Judge Wallace to a jury, in which it was ruled that suspenders composed of india rubber and cotton, with some small admixture of silk were taxable under section 13 and not section 8. This opinion of a very able judge has caused me to hesitate and to re-examine carefully the grounds of my first impression, but I am unable to change them. I think the statute tolerably clear in this respect, as much so as can be expected. This webbing is a manufacture of india rubber, silk, and cotton, and so is provided for by section 8, and in explicit and unambiguous terms excepted out of section 13.

The district attorney gave a history of the legislation, which I think tends to prove that the intent of the legislature would be likely to be what I have held it to be; but the construction of the statute does not, in my opinion, need this re-enforcement, though it does certainly to some extent, strengthen the agreement. The statute of 1872 reducing the duty on all manufactures of india rubber, gutta percha, and straw, means, in my opinion, manufactures composed wholly of those articles, or substantially so, and therefore does not embrace this webbing. Judgment for the defendant.

### Case No. 4,708.

In re FAY.

[3 N. B. R. 660 (Quarto, 163).] [1]

District Court, D. Massachusetts. 1870.

---

[1] [Reprinted by permission.]

LOWELL, District Judge. The witness cannot refuse to answer questions concerning his dealings, etc., with the bankrupt, on the ground that his answer may furnish evidence against him in a civil case, brought or to be brought on behalf · of the assignee. The main, if not the only, purpose of the statute authorizing such an examination is to enable the assignee to obtain evidence for civil suits, or to ascertain that there is no such evidence.

## Case No. 4,709.

### FAY et al. v. MONTGOMERY.

[1 Curt. 266.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1852.

CURTIS, Circuit Justice. This is a libel in the admiralty, filed by Richard S. Fay

---

[1] [Reported by Hon. B. R. Curtis, Circuit Justice.]

and Charles B. Fessenden, as owners of the ship Admittance, against John B. Montgomery, a captain in the navy of the United States. The original libel states, that on the 24th of June, 1846, the owners of the Admittance, which was a registered vessel of the United States, chartered her to certain persons doing business in New Orleans, under the firm of Wyllie & Egand, for a voyage from New Orleans to San Blas, with a proviso, that if, upon the arrival of the vessel off the port of San Blas, that port should be blockaded, or the discharge of the cargo would be otherwise prevented, the vessel should proceed to the Sandwich Islands, and there remain, until the port of San Blas should be opened; but that it was not the intention of either of the parties that the vessel should enter or trade with any port in the possession of the Mexican government, unless peace had been previously declared; and that the master was instructed to ascertain, when he got into the Pacific ocean, and near the coast of Mexico, whether the war between the United States and Mexico continued; and if it did, and San Blas was not in the possession of the forces of the United States, to proceed to the Sandwich Islands. The libel further states, that, at Valparaiso, the master was informed that the whole coast of California was in possession of the forces of the United States, but on arriving off San Blas, he learned that the war continued, and that port was in possession of the Mexicans; but that the port of San José was in the possession of the forces of the United States, and being in want of wood and water, he proceeded thither. It then goes on to detail some facts tending to show the master did not design to trade with the enemy, and states, that while lying at San José, the sloop of war Portsmouth, commanded by the respondent, arrived, and, without any probable cause, the respondent took forcible possession of the Admittance, and has ever since retained the same; that he did not send the Admittance to the United States for trial, as he might easily and safely have done, and thereby converted the vessel and cargo to his own use; and they pray for a decree, adjudging the defendant to pay the value of the vessel and freight, and other damages. An amended libel was filed, substantially like the original libel, save that it avers that no proceedings have been instituted against the said vessel in any court of admiralty, and it prays that the respondent may be ordered to proceed to condemnation of the vessel as prize, in some proper court, within a fixed time; and that, in default thereof, restitution may be decreed in this suit. The answer of the respondent, after stating that the Admittance and her cargo were captured as prize of war, and propounding certain causes therefor, which are not necessary to be stated in this connection, avers